

ALAN HIMMELFARB - SBN 90480
KAMBEREDELSON, LLP
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

JAY EDELSON
MICHAEL J. ASCHENBRENER
KAMBEREDELSON, LLC
350 N. LaSalle St.
Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MAUREEN THOMPSON, an individual, on
behalf of herself and all others similarly
situated,

             Plaintiff,

v.

T-MOBILE USA, INC., a Delaware
Corporation, DANGER, INC., a Delaware
Corporation, and MICROSOFT
CORPORATION, a Washington Corporation.

             Defendant.

Case No. **C09   04854 HRL**

**COMPLAINT FOR:**

  **(1) Negligence;**
  **(2) California Consumer Legal**
      **Remedies Act;**
  **(3) Cal. Bus. & Prof. Code**
      **§ 17200; and,**
  **(4) Cal. Bus. & Prof.**
      **Code § 17500.**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION**

COMPLAINT

1    Plaintiff, by her attorneys, upon personal knowledge as to himself and his own acts

2    and upon information and belief as to all other matters, alleges as follows:

3    **NATURE OF THE ACTION**

4    1.    Plaintiff, Maureen Thompson ("Plaintiff" or "Ms. Thompson"), brings this

5    class action complaint against Defendants T-Mobile USA, Inc. ("T-Mobile"), headquartered

6    in Bellevue, Washington, Danger, Inc. ("Danger"), headquartered in Palo Alto, California,

7    and Microsoft Corporation ("Microsoft"), headquartered in Redmond, Washington, (all

8    collectively "Defendants," Danger and Microsoft dually as "Microsoft/Danger") for service

9    interruptions and personal data loss suffered by her and users of the T-Mobile Sidekick line

10   of wireless phone devices in October, 2009.

11   2.    On or about October 1, 2009, all Sidekick users began experiencing the

12   inability to access data and content on their devices, including but not limited to instant

13   messages, emails, contacts in their address books, and even complete loss of device

14   functionality.  Users also began experiencing the inability to access all data services,

15   including but not limited to email service, instant message service, social-networking service,

16   and photo service.

17   3.    By October 10, 2009, T-Mobile publicly admitted that most all personal

18   information stored on the devices, including "contacts, calendar entries, to-do lists [and]

19   photos," were lost and believed to be permanently irretrievable.

20   4.    Estimates indicate approximately 1 million T-Mobile Sidekick users suffered

21   catastrophic data loss.

22   **PARTIES**

23   5.    Plaintiff Maureen Thompson is a resident of Snellville, Georgia.  She

24   maintains an account with T-Mobile on which her daughter uses a T-Mobile Sidekick device.

25   She suffered complete and catastrophic loss of all data on her daughter's Sidekick.

26

27

28

COMPLAINT

1         6.     Defendant T-Mobile USA, Inc. is a leading provider of cellular phone and

2    data service in the United States.  It is a Delaware corporation headquartered in the State of

3    Washington at 12920 SE 38th St, Bellevue, Washington 98006.  T-Mobile USA, Inc. does

4    business throughout the State of California and the nation.

5         7.     Defendant Danger, Inc. provides end-to-end mobile data and internet services

6    to wireless providers, such as T-Mobile USA.  Danger, Inc. is a subsidiary of Microsoft

7    Corp.  It is a Delaware corporation headquartered in Santa Clara County, California at 3101

8    Park Blvd., Palo Alto, California 94306.  Danger, Inc. does business throughout the State of

9    California and the nation.

10         8.     Defendant Microsoft Corporation is a computer technology company that

11    designs, develops, manufactures, markets, and sells a broad range of technology products,

12    including both software and hardware.  Microsoft completed its acquisition of Danger, Inc.

13    on April 15, 2008.  Microsoft is a Washington corporation headquartered at One Microsoft

14    Way, Redmond, Washington 98052.  Microsoft Corp. does business throughout the State of

15    California and the nation.

16                               **JURISDICTION AND VENUE**

17         9.     This Court has jurisdiction over the subject matter of this action pursuant to

18    28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a

19    state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive

20    of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

21         10.     Personal jurisdiction and Venue are proper because Danger, Inc. is a

22    corporation headquartered in San Clara County and/or because the improper conduct alleged

23    in this Complaint occurred in, was directed from, and/or emanated or exported from

24    California.

25

26

27

28

COMPLAINT

3

## INTRADISTRICT ASSIGNMENT

11.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division as it arises from Santa Clara County.

### FACTS

**The Sidekick Platform**

12.     T-Mobile sells the Danger Hiptop, which it markets as the "T-Mobile Sidekick" and has since 2002.  The Sidekick line of devices ("Sidekicks") includes the T-Mobile Sidekick, T-Mobile Sidekick 2, T-Mobile Sidekick 3, T-Mobile Sidekick iD, T-Mobile Sidekick LX, T-Mobile Sidekick Slide, T-Mobile Sidekick 2008, and the T-Mobile Sidekick LX 2009.

13.     T-Mobile is currently the exclusive provider of Danger Hiptops or Sidekicks in the United States, much in the same way that AT&T is the exclusive carrier for the Apple iPhone.

14.     Danger developed and provides the Sidekick software, including its operating system, and back-end technology services associated with Sidekicks.

15.     Sidekicks are unique among mobile phones in that they rely almost exclusively on Microsoft/Danger's back-end servers to store and process most functions and data.  This means that Microsoft/Danger store Sidekick users' address book contacts, photos, text messages, calendar entries on Microsoft/Danger servers, not on the Sidekicks themselves.

16.     This is an example of so-called "cloud computing" whereby users store information not on their own computers or devices, but via the Internet on technology providers' massive servers.  Other examples of cloud computing include Facebook and Google's Gmail email service.

17.     More specifically, the T-Mobile Sidekick system is an example of a "cloud client."  This means that T-Mobile Sidekick users rely on Microsoft/Danger to provide the

1    Sidekick services via the cloud (the Internet) and that Sidekicks are essentially useless should

2    Microsoft/Danger fail to provide these services.

3        18.    T-Mobile and Microsoft/Danger have touted this mode of operation as a

4    benefit to consumers because it means that user data can simply be sent by Microsoft/Danger

5    servers to a new Sidekick should an existing Sidekick become lost or destroyed.

6        19.    For example, in an October 24, 2007 Danger press release, Danger

7    specifically stated that "the Sidekick LX offers an integrated and simple-to-use suite of

8    applications including push e-mail, Web browsing, instant messaging, a full featured mobile

9    phone, calendar, address book and media player as well as a constantly updated content

10   catalog. With the powerful service that supports each device, users are provided with

11   additional benefits, such as an always-on internet connection, *free automatic data back-up*,

12   and ongoing feature and user-experience improvements." (Emphasis added.)

13       20.    In a November 15, 2007 T-Mobile press release, T-Mobile stated that

14   "Additional benefits of Danger's service include always-on internet connection, *automatic

15   data back-up*, and ongoing feature and user-experience improvements." (Emphasis added.)

16       21.    While T-Mobile is the exclusive carrier for Sidekicks and provides the

17   wireless internet connection necessary for Sidekicks to function with Microsoft/Danger's

18   servers, it is Microsoft/Danger that actually stores all of the T-Mobile Sidekick user

19   information and is responsible for the safe-keeping of that data.

20       22.    Sidekick users are also able to purchase and download programs and

21   applications from the Sidekick Catalog.

22   **The Sidekick Data Outage**

23       23.    On or about October 1, 2009, all Sidekick users began experiencing the

24   inability to access data and content on their devices, including but not limited to instant

25   messages, emails, contacts in their address books, applications paid for and downloaded from

26   the Sidekick Catalog, and even complete loss of device functionality.  Users also began

27

28

COMPLAINT

5

1    experiencing the inability to access all data services, including but not limited to email

2    service, instant message service, social-networking service, and photo service.

3          24.      On or about Saturday, October 10, 2009, T-Mobile issued a press release that

4    stated, in part:

> Regrettably, based on Microsoft/Danger's latest recovery assessment
> of their systems, we must now inform you that personal information
> stored on your device – such as contacts, calendar entries, to-do lists or
> photos – that is no longer on your Sidekick almost certainly has been
> lost as a result of a server failure at Microsoft/Danger. That said, our
> teams continue to work around-the-clock in hopes of discovering some
> way to recover this information. However, the likelihood of a
> successful outcome is extremely low.
>
>         . . .
>
> We continue to advise customers to NOT reset their device by
> removing the battery or letting their battery drain completely, as any
> personal content that currently resides on your device will be lost.

14          25.      The reason for the advice not to reset the Sidekick devices is based on the

15   cloud computing nature of the Sidekick platform.  Sidekicks retrieve information as

16   necessary from the Microsoft/Danger servers and cache temporary copies on the Sidekicks.

17   The copies of user data stored on Sidekicks do not serve as permanent copies of the data

18   stored on Microsoft/Danger's servers.  Instead, they are mere temporary copies that mirror

19   the master copies on Microsoft/Danger's servers.  In the event the master copies are

20   destroyed, as happened in this case, the temporary cached copies will also be destroyed,

21   particularly and necessarily on device re-boot.

22          26.      Further complicating the data loss is the fact that Sidekicks, unlike iPhones,

23   BlackBerrys and other smartphones, are not designed to sync locally with a user's personal

24   computer without additional software and hardware.  This means that most users were not

25   able to backup their data locally, but were encouraged and required to rely on

26   Microsoft/Danger.

27

28

COMPLAINT

**T-Mobile's Response to this Catastrophe**

27.    T-Mobile provided periodic status updates and statements via press releases and internet releases in the wake of this problem.

28.    On Monday, October 12, 2009, T-Mobile issued a press release that stated, in relevant part:

> In the event certain customers have experienced a significant and permanent loss of personal content, T-Mobile will be sending these customers a $100 customer appreciation card. This will be in addition to the free month of data service that already went to Sidekick data customers. This card can be used towards T-Mobile products and services, or a customer's T-Mobile bill. For those who fall into this category, details will be sent out in the next 14 days – there is no action needed on the part of these customers.

29.    Plaintiff believes that T-Mobile's offer is insufficient and unclear.  For example, it leaves open several questions including but not limited to:

a.    How does T-Mobile define "significant and permanent loss of personal content?"

b.    If appreciation card recipients use them to purchase new phones, will they be required to sign contract extensions?  Will they be required to pay full purchase price or lesser upgrade prices?

c.    Will content users purchased in the Sidekick Catalog be restored free of charge?

d.    Will prepaid customers be treated in the same manner as contract customers?

e.    What will T-Mobile offer to Sidekick users who wish to replace Sidekicks with other devices?

## FACTS RELATING TO PLAINTIFF

30.    Ms. Thompson maintains an account with T-Mobile for wireless telephone service.  Her daughter uses a line of service on Plaintiff's account and owns and uses a T-Mobile Sidekick device on this line of service maintained by Plaintiff.

COMPLAINT

31.     On or about October 8-11, 2009, Ms. Thompson suffered a complete and catastrophic loss of all data on her daughter's Sidekick.  This includes but is not limited to loss of appointments and contacts.  Plaintiff's daughter also used her Sidekick to store, among other items, pictures and song lyrics on her Sidekick.  All of this data is also lost.  As a result, Plaintiff and her daughter have suffered irreparable damage.

32.     When purchasing the Sidekick, Plaintiff specifically relied on T-Mobile's representations that if she lost the phone or it became damaged, T-Mobile would restore all her data to a new Sidekick because the Sidekick system would backup the data for her.

## CLASS ALLEGATIONS

33.     Plaintiff Thompson brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. Civ. P. 23(b)(3) on behalf of herself and the following classes:

      a.  **The Sidekick Class.** All persons and entities nationwide that used a Sidekick mobile phone and stored data on the servers of Defendants.

      b.  **The Sidekick Data Storage Class.** All consumers who used a Sidekick mobile phone and stored data on the servers of Defendants.

      c.  **The Sidekick Data Loss Class.** All persons and entities nationwide that used a Sidekick mobile phone and stored data on the servers of Defendants and who also lost data.

Excluded from the Classes are Defendant, its legal representatives, assigns, and successors, and any entity in which Defendant has a controlling interest.  Also excluded is the judge to whom this case is assigned and the judge's immediate family.

34.     Plaintiff reserves the right to revise these definitions based on facts learned in discovery.

35.     **Numerosity.**  The Classes consist of thousands of individuals and other entities, making joinder impractical. Individual joinder of all members of the Class is

COMPLAINT

1    impracticable. Upon information and belief, class members can be identified by the

2    electronic records of Defendants.

3         36.    **Typicality.** The claims of Plaintiff are typical of the claims of all of the other

4    members of the Classes as Plaintiff and Class members were all subjected to Defendants'

5    identical wrongful conduct based upon the same transactions which occurred uniformly to

6    the Plaintiff and to the public.

7         37.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the

8    interests of the other members of the Classes. Plaintiff has retained counsel with substantial

9    experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are

10   committed to vigorously prosecuting this action on behalf of the members of the Classes, and

11   have the financial resources to do so. Neither Plaintiff nor her counsel have any interest

12   adverse to those of the other members of the Classes.

13        38.    **Superiority.** Absent a class action, most members of the Classes would find

14   the cost of litigating their claims to be prohibitive and will have no effective remedy. The

15   class treatment of common questions of law and fact is also superior to multiple individual

16   actions or piecemeal litigation in that it conserves the resources of the courts and the litigants,

17   and promotes consistency and efficiency of adjudication.

18        39.    Defendants have acted and failed to act on grounds generally applicable to

19   Plaintiff and the other members of the Classes, requiring the Court's imposition of uniform

20   relief to ensure compatible standards of conduct toward the members of the Classes.

21        40.    The factual and legal bases of Defendants' liability to Plaintiff and to the other

22   members of the Classes are the same, resulting in injury to Plaintiff and all of the other

23   members of the Classes. Plaintiff and the other members of the Classes have all suffered

24   harm and damages as a result of Defendants' wrongful conduct.

25        41.    **Commonality.** There are many questions of law and fact common to the

26   claims of Plaintiff and the other members of the Classes, and those questions predominate

27

28

COMPLAINT

over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

        (a)    whether Defendants' conduct described herein constitutes negligence;

        (b)    whether Defendants' conduct described herein violates California's Consumer Legal Remedies Act;

        (c)    whether Defendants' conduct described herein violates Cal. Bus. & Prof. Code § 17200;

        (d)    whether Defendants' conduct described herein violates Cal. Bus. & Prof. Code § 17500;

        (e)    whether Defendants misrepresented to users that the Sidekick mobile phone has an "always-on internet connection," and that the Sidekick mobile phone has automatic data back-up;

        (f)    whether Defendants concealed and did not disclose that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, backup procedures, and the training and testing necessary to insure that all of these functions operated to achieve the guarantees and promises Defendants made to users of its products and services;

42.    The questions of law and fact common to the members of the classes predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

43.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

COMPLAINT

44.     The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts.  In each case, Defendants represented that Sidekick mobile phone users always had access to their personal data, and that such data would and could be properly entrusted to Defendants to maintain and retain, safely, securely and always available, no matter what might happen to the individual phone the user utilized to access that data.  What Defendants did not disclose to Plaintiff and members of the Classes was that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to insure that all of these functions operated to achieve the guarantees and promises Defendants made to users of its products and services. Defendants saved money by not investing these necessary resources to back up these promises and guarantees made to users of its products and services.

45.     Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

46.     Given the similar nature of the Class members' claims and the absence of material differences in the state statutes and common laws upon which the class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

47.     The Court may be requested to also incorporate subclasses of Plaintiff, Defendants, or both, in the interest of justice and judicial economy.

48.     In the alternative, the class may be certified because:

(a)     the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with

1    respect to individual class members which would establish

2    incompatible standards of conduct by defendant;

3    (b)    the prosecution of separate actions by individual class members would

4    create a risk of adjudications with respect to them which would, as a

5    practical matter, be dispositive of the interests of other class members

6    not parties to the adjudications, or substantially impair or impede their

7    ability to protect their interests; and

8    (c)    Defendants have acted or refused to act on grounds generally

9    applicable to the class, thereby making appropriate final and injunctive

10    relief with respect to the members of the class as a whole.

11                              **FIRST CAUSE OF ACTION**

12                                        **Negligence**

13            **(on behalf of Plaintiff and all Classes against all Defendants)**

14    49.    Plaintiff incorporates by reference the foregoing allegations.

15    50.    Defendants owed a duty of care to Plaintiff and the members of the Class.

16    51.    By virtue of their assumption of duties and responsibilities of providing

17    mobile phone services to Plaintiff and the members of the Class, including backup services

18    for all of the data and information entrusted to Defendants by Plaintiff and the members of

19    the Classes, Defendants owed to Plaintiff and the members of the Classes the duty to act in

20    such a manner as a reasonably prudent person would act under similar circumstances.

21    52.    Pursuant to the duties and responsibilities assumed by Defendants, Defendants

22    were required to maintain 24-hour access to the personal data of Plaintiff and the members of

23    the Classes, and that such data would and could be properly entrusted to Defendants to

24    maintain and retain, safely, securely and always available, no matter what might happen to

25    the individual phone the user utilized to access that data.

26

27

28

COMPLAINT

53.     Defendants breached their duty to Plaintiff and the other Class members by failing to adequately insure the safety, security and availability of the data belonging to Plaintiff and the Class members.  Specifically, and further, Defendants negligently failed to invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to insure that the functions and operations Defendants assumed would operate to permit Plaintiff and the members of the Class to access and keep safe and secure that data they entrusted to Defendants.

54.     Had the Defendants exercised reasonable care and skill in protecting the data of Plaintiff and class members, data would not have been lost.

55.     Plaintiff and the Class members have suffered economic damage as a direct and proximate result of the failure of the Defendants to properly take care and custody of the data entrusted to them by Plaintiff and the Class members.  The exact amount of loss is to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### Violation of California Consumer Legal Remedies Act ("CLRA")

### (on behalf of Plaintiff and all Classes against all Defendants)

56.     Plaintiff incorporates by reference the foregoing allegations.

57.     The Consumer Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

58.     Plaintiff and each member of the Classes are "consumers" within the meaning of Civil Code § 1761(d).  This cause of action applies to any person that used their Sidekicks, in part or in whole, for personal use.

59.     The Sidekicks that Plaintiff and each member of the Classes own are "goods" within the meaning of Civil Code Section 1761(a).  The monthly mobile services for which Sidekick owners pay a monthly fee are "services" within the meaning of Civil

COMPLAINT

13

1   Code § 1761(b).

2        60.    Defendants violated the CLRA in at least the following respects:

3              (a)    In violation of § 1770(a)(5), Defendants have represented that

4                     Sidekicks have characteristics, uses, and benefits that they do not have;

5                     and,

6              (b)    In violation of § 1770(a)(9), Defendants have advertised Sidekicks and

7                     related services with an intent not to sell them as advertised.

8        61.    Defendants concealed material facts regarding Sidekicks from Plaintiff and

9   other Class members, including that they fail to perform in accordance with its advertised

10  performance specifications, including but not limited to the facts that the Sidekicks have

11  "always-on internet connections" and that Sidekicks have automatic data backup.  This type

12  of information is relied upon by consumers in making purchase decisions, and is fundamental

13  to the decisions to purchase a costly mobile phone with monthly fees for use and operation.

14       62.    One of the major selling points of Sidekicks was that users always had access

15  to their personal data, and that such data would and could be properly entrusted to

16  Defendants to maintain and retain, safely, securely and always available, no matter what

17  might happen to the individual device that Sidekick owners utilized to access that data.  What

18  Defendants did not disclose to Plaintiff and members of the Classes was that Defendants did

19  not invest the resources, including hardware, software, procedures, maintenance, security,

20  back up procedures, and the training and testing necessary to insure that all of these functions

21  operated to achieve the guarantees and promises Defendants made to users of its products

22  and services. Defendants saved money by not investing these necessary resources to back up

23  these promises and guarantees made to users of its products and services.

24       63.    Had Defendants disclosed the true facts that Sidekicks did not have always-on

25  internet connections and did not automatically backup for the personal content that

26  consumers entrusted Defendants to maintain, such information would have been made known

27

28
_____
COMPLAINT

14

1 | to Plaintiff and other Class members through the marketing and advertising presented to

2 | Plaintiff by retailers, resellers, Defendants, the trade press and others.

3 |      64.    Had Defendants disclosed this material information regarding Sidekicks to

4 | Plaintiff and the other Class members, they would not have purchased Sidekicks, nor the

5 | monthly plan that supposedly promised those features prominently advertised and promoted

6 | by Defendants.

7 |      65.    Plaintiff and other Class members relied upon Defendants' misrepresentations

8 | to their detriment.

9 |      66.    Defendants' failure to disclose Sidekicks' inability to meet their advertised

10 | performance parameters, and their conscious concealment of a fatal flaw in the operation of

11 | Sidekicks by which all copies of all users' data were maintained in unsecure and non-

12 | redundant servers, are omissions and concealments of material fact that constitute unfair,

13 | deceptive, and misleading business practices in violation of Civil Code Section 1770(a).

14 |      67.    Defendants' deceptive acts and omissions occurred in the course of selling

15 | consumers products and services and have occurred continuously through the filing of this

16 | Complaint.

17 |      68.    As a direct and proximate result of Defendants' violation of Civil Code

18 | § 1770, et seq., Plaintiff and other Class members have suffered irreparable harm. Plaintiff,

19 | on behalf of herself and on behalf of the Classes, seek injunctive relief.

20 | **THIRD CAUSE OF ACTION**

21 | **Violation of Cal. Bus. Prof. Code § 17200**

22 | **(on behalf of Plaintiff and all Classes against all Defendants)**

23 |      69.    Plaintiff incorporates by reference the foregoing allegations.

24 |      70.    Section 17200 proscribes unfair business competition and defines this to

25 | include any unfair, unlawful, or fraudulent business practice or act.

26

27

28

COMPLAINT

71.     One of the major selling points of Sidekicks was that users always had access to their personal data, and that such data would and could be properly entrusted to Defendants to maintain and retain, safely, securely and always available, no matter what might happen to the individual device that Sidekick owners utilized to access that data.  What Defendants did not disclose to Plaintiff and members of the Classes was that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to insure that all of these functions operated to achieve the guarantees and promises Defendants made to users of its products and services. Defendants saved money by not investing these necessary resources to back up these promises and guarantees made to users of its products and services.

72.     Defendants' acts and practices as alleged in this Complaint constitute unlawful, unfair, and/or fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*

73.     Defendants engaged in unlawful business practices by, among other things:

(a)     engaging in conduct, as alleged herein, that violates the California's Consumer Legal Remedies Act; and

(b)     engaging in conduct that undermines or violates the stated policies underlying the California's Consumer Legal Remedies Act.

74.     Defendants engaged in unfair business practices by, among other things:

(a)     engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and Class members;

(b)     engaging in conduct that is reckless, unconscionable, or substantially injurious to Plaintiff and Class members;

(c)     engaging in conduct that undermines or violates the stated policies underlying the Consumer Legal Remedies Act which seeks to protect California consumers against advertising practices and to promote a

COMPLAINT

16

1  basic level of honesty and reliability in the marketplace, and a level

2  playing field, so that companies that do invest in the appropriate

3  technology and services to comply with their promises and

4  representations to users do not have to complete with those companies

5  and business that make such promises but are not burdened with the

6  costs of honest compliance.

7    75.    Defendants engaged in fraudulent business practices by engaging in conduct

8  that was and is likely to deceive consumers acting reasonably under the circumstances.

9  Defendants' fraudulent business practices include but are not limited to:

10    (a)    failing to disclose that Defendants did not keep or retain any back up

11       of users' personal data;

12    (b)    failing to disclose that there was a high risk of loss of users' personal

13       data;

14    (c)    failing to disclose that Defendants had no back up plan or procedure if

15       a failure should occur with the servers that retained and maintained

16       users' data;

17    (d)    failing to disclose that Defendants did not invest the resources,

18       including hardware, software, procedures, maintenance, security, back

19       up procedures, and the training and testing necessary to insure that all

20       of these functions operated to achieve the guarantees and promises

21       Defendants made to users of its products and services; and,

22    (e)    failing to disclose that Defendants saved money by not investing these

23       necessary resources to back up these promises and guarantees made to

24       users of its products and services.

25    76.    As a direct and proximate result of Defendants' unlawful, unfair, and

26  fraudulent acts, business practices, and conduct, Plaintiff and Class members have suffered

27

28

COMPLAINT

17

1   injury in fact and lost valuable property (data) as a result of Defendants' practices in that,

2   among other things:

      (a)    Plaintiff and Class members would not have entrusted Defendants to

3              be the sole back up repository for their valuable personal and business

4

5              data;

      (b)    Plaintiff and Class members would not have purchased a mobile phone

6

7              device that did not have reliable data storage and retrieval capacity;

      (c)    Plaintiff and Class members would not have entered into service

8

9              agreements with companies that did not have the reliable data storage

10             and retrieval capacity;

      (d)    Plaintiff and the Class members would have sought or obtained other

11

12             means to back up and protect their valuable and irreplaceable data and

13             would not have tied themselves to a system that did not have this

14             capacity; and,

      (e)    Plaintiff lost personal, critical, business and/or other data that Plaintiff

15

16             and the Class members entrusted to Defendants for safekeeping and

17             access.

18      77.    Plaintiff, on behalf of herself and on behalf of each member of the Class,

19  seeks individual restitution, injunctive relief and other relief allowed under § 17200, *et seq.*

20                    **FOURTH CAUSE OF ACTION**

21              **Violation of Cal. Bus. Prof. Code § 17200**

22       **(on behalf of Plaintiff and all Classes against all Defendants)**

23      78.    Plaintiff incorporates by reference the foregoing allegations.

24      79.    Defendants engaged in advertising and marketing to the public and offered for

25  sale Sidekicks on a nationwide basis including in California.  Defendants engaged in

26  advertising to the public, including to Plaintiff and members of the Classes, offering for sale

27

28

mobile phones that were represented to have an "always-on internet connection" and that the "automatic data back-up." Defendants engaged in such advertising with the intent to induce Plaintiff and members of the Classes to purchase Sidekicks and enter into long-term service agreements for mobile phone services with respect to such Sidekick mobile phones.

80.    Plaintiff is informed and believes and thereon alleges that Defendants' advertising is untrue or misleading and likely to deceive the public in that the advertising portrays a level of performance and reliability that the Sidekick mobile phones did not have and could not deliver.

81.    In making and disseminating the statements herein alleged, Defendants knew, or by the exercise of reasonable care should have known, that the statements were false and misleading and so are in violation of § 17500 Cal. Bus. & Prof. Code.

82.    Defendants' advertising, as herein alleged, constitutes unfair competition in correlation of § 17200 of the Cal. Bus. & Prof. Code.

83.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts, business practices, and conduct, Plaintiff and Class members have suffered injury in fact and lost valuable property (data) as a result of Defendants' practices in that, among other things:

(a)    Plaintiff and Class members would not have entrusted Defendants to be the sole back up repository for their valuable personal and business data;

(b)    Plaintiff and Class members would not have purchase a mobile phone device that did not have reliable data storage and retrieval capacity;

(c)    Plaintiff and Class members would not have entered into service agreements with companies that did not have the reliable data storage and retrieval capacity;

COMPLAINT

19

(d)     Plaintiff and the Class members would have sought or obtained other means to back up and protect their valuable and irreplaceable data and would not have tied themselves to a system that did not have this capacity;

(e)     Plaintiff and Class members lost personal, critical, business and/or other data that Plaintiff and the Class members entrusted to Defendants for safekeeping and access.

84.     Unless restrained by this court, Defendants will continue to engage in false and misleading advertising, as herein alleged, in violation of sections 17500 and 17200 of the California Business and Professions Code.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, pray for the following relief:

A.     Certify this case as a class action on behalf of the Classes defined above, appoint Maureen Thompson as class representative, and appoint her counsel as class counsel;

B.     Declare that the actions of Defendants, as set out above, constitute negligence, and violate the California Consumer Legal Remedies Act, the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, and Cal. Bus. and Prof. Code § 17500;

C.     Award injunctive and equitable relief, including restitution, on the First through Fourth Causes of Action in an amount to be determined at trial including, inter alia: (a) prohibiting Defendants from engaging in the acts of unfair competition and false advertising alleged herein; (b) requiring Defendants to disgorge all of its ill-gotten gains to Plaintiff and members of the Class, or to whomever the Court deems appropriate; (c) awarding Plaintiff and members of the Class full restitution of all monies wrongfully acquired by Defendants by means of the wrongful conduct alleged herein; and (d) ordering

COMPLAINT

20

1   such funds or assets to be impounded, or a trust imposed, to avoid dissipation, fraudulent

2   transfers, and/or concealment of such monies or assets by Defendants;

3        D.    Award damages on the First Cause of Action in an amount to be determined at

4   trial;

5        E.    Award Plaintiff and the Classes their reasonable litigation expenses and

6   attorneys' fees;

7        F.    Award Plaintiff and the Classes pre- and post-judgment interest, to the extent

8   allowable;

9        G.    Enter injunctive and/or declaratory relief as is necessary to protect the

10  interests of Plaintiff and the Classes; and

11       H.    Award such other and further relief as equity and justice may require.

12                              **JURY TRIAL**

13       Plaintiff demands a trial by jury for all issues so triable.

14
                                    Respectfully submitted,

15  Dated:  October _13_, 2009          KAMBEREDELSON, LLP

16

17                                  By: _____

18                                       ALAN HIMMELFARB
                                         One of the Attorneys for Plaintiffs

19

20  ALAN HIMMELFARB - SBN 90480
    KAMBEREDELSON, LLP
21  2757 Leonis Boulevard
    Vernon, California 90058
22  Telephone: (323) 585-8696

23  JAY EDELSON
    MICHAEL J. ASCHENBRENER
24  KAMBEREDELSON, LLC
    350 N. LaSalle St.
25  Suite 1300
    Chicago, IL 60654
26  Telephone: (312) 589-6370

27

28
    COMPLAINT